WADDELL (CUSHMAN v.).  See Case No. 3,516.

WADDELL (MARTIN v.).  See Case No. 9,-169.

## Case No. 17,028.

### WADDINGTON v. BANKS et al.

[1 Brock. 97.] [1]

Circuit Court, D. Virginia.  Nov. Term, 1805.

VENDOR AND VENDEE — TRUSTS — PARTNERSHIP REAL ESTATE—INDIVIDUAL EQUITIES.

1. The vendor of an estate. who has received the purchase money but retains the legal title, is a mere trustee for his vendee, and can avail himself of no act prejudicial to the trust.
[Cited in Felch v. Hooper, 119 Mass. 57.]

2. But. quære. Where a mercantile firm sells real estate. and receives the purchase money without making a conveyance of it to the purchaser, and several intermediate sales are made, and the last purchaser brings suit against the surviving partner to compel a conveyance of the legal title, will an individual equity acquired by the surviving partner against one of the intermediate purchasers, operate such an union in him of the legal and equitable titles as to give him a perfect title

[1] [Reported by John W. Brockenbrough, Esq.]

to the property to the extent of that equity, and thus prevent the court from decreeing that he shall convey the legal title to the last purchaser? The situation of the surviving partner, seeking to establish such an equity, would at least be delicate: he would be required completely to show the fairness of his transactions, and he would not be permitted, as against the purchaser of the equitable title. to derive any advantage from speculation or from money actually advanced with notice of the equity of the purchaser.

In equity.

MARSHALL, Circuit Justice. This is an application to this court to direct a trustee to execute a trust by selling property on which several different claims are asserted. Before such an order can be made. the court ought certainly to be satisfied of the title of the trustee. The lands conveyed in trust were originally part of a larger lot, the property of James Currie. by whom it was sold and conveyed to Hunter. Banks & Co. By Henry Banks. the agent and surviving partner of Hunter. Banks and Co. this lot was divided into smaller parcels. one of which was sold to Nelson. Heron & Co., and another to Fulwar Skipwith, who sold a part to F. Groves, who sold to John Stockdell. To Fulwar Skipwith no conveyance was made. nor is there any other evidence of the sale to him. than a bond executed by the said Skipwith with Henry Banks as security. which recites the sale made by Banks to Skipwith. and undertakes that Skipwith shall make a good title to Groves. This bond acknowledges the receipt of the purchase money from Groves. and is dated on the 29th of July, 1784. As it is not alleged that Banks had not received the purchase money from Skipwith, and as Banks has bound himself that a good title should be made to Groves, who is admitted to have paid a full consideration for the property. it will not be questioned that the whole equitable estate was in Groves. and that on application. a court of equity would have decreed Henry Banks to convey the legal estate to him also. This bond was afterwards assigned to John Stockdell, in whom the equitable estate was thereby completely vested. In February, 1788. Stockdell conveyed this lot with other property to James Brown in trust. to secure a debt to Alexander Donald. having previously mortgaged it to Young and others. On the 3d of December. 1789. Stockdell & Young and others. the previous mortgagees, united in a conveyance to Alexander Donald. This deed purports to be an absolute conveyance.

(On the second day of July, 1790, Alexander Donald executed a deed conveying the said property to James Brown in trust. to convey it to such person as the said Donald should afterwards appoint. Donald subsequently. but before the institution of this suit, made a conveyance of the same to Daniel Call, in trust. to sell the same and pay the money arising from the sale to the plaintiff Waddington. and also directed Brown to convey the same to Daniel Call, in order to enable him to fulfill the last mentioned trust.)

Thus was the interest of Stockdell completely

vested in Donald, and if there were no other circumstances in the case, it would be unquestionable that the legal title, which still remained in Hunter, Banks & Co. was without a single, equitable circumstance which could restrain a court of chancery from decreeing a conveyance from him to Donald. Against this equitable title, the defendant Banks relies on a counter equity, which is produced by a debt due to him from Stockdell, to secure which this bond was endorsed in blank by Stockdell, but they had been previously pledged to John Young, to whom Henry Banks says he paid £800 for the possession of this pledge and of the deed for another parcel of the same lot which had been also purchased by Stockdell. Having thus united an equity to his legal title. he relies upon that legal title to secure the debt due to him from Stockdell. and also to secure the money paid to Young.

In examining this claim, a difficulty presents itself at the very threshhold. To give it efficacy, there must be a union of the equitable and legal title. But in this case the equitable claim is in Henry Banks. and the legal title in Hunter, Banks & Co. I have not inquired whether the circumstance of Henry Banks, being the surviving partner of Hunter, Banks & Co., will have any influence on the case, because that fact does not appear, and because, from any thing that is yet shown in the papers. I should not deem the inquiry essential. But it is material to inquire what was the relation between Henry Banks and Stockdell, when the rights of Donald and of Banks accrued? The vendor of an estate, who has received the purchase money, but retains the legal title. is certainly a mere trustee for his vendee, and can avail himself of no act prejudicial to the trust. I believe this position is correct. If gentlemen think it is not, I will with much pleasure hear them upon it. Presuming it for the present to be correct. I shall proceed to consider the case as if Mr. Banks was a trustee. holding the legal estate in trust for the purchaser of the equitable title. I will not determine what the law in such a case would be, if Mr. Banks had advanced money to Mr. Stockdell, under a stipulation that he might retain the lien upon the estate to secure the repayment of that money. Perhaps the agreement would be carried into effect. But I have no hesitation in saying, that the situation of a person so circumstanced is delicate. the fairness of his transactions must be completely made out, and he will not be permitted, as against the purchaser of the equitable title. to derive any advantage from speculation. or from money actually advanced with notice of the equity of the purchaser. Mr. Banks then, would be required to show at what time he acquired the bonds he holds, what were the circumstances under which they were acquired. and what sum of actual money was advanced for them. The whole proof would be upon him.

When I look for the proof on these points, I find none which favours the claim of Mr. Banks. His own answer, if it were evidence, does not furnish them. He does not state these particulars, and it would be necessary that he should state them, in order to make out a case which the court might inquire into. The proofs in the cause lead to an opinion destructive of his equity. The most material paper is the original bond to Skipwith, in possession of Mr. Banks. with a blank endorsement. On the 22d of February, 1788, this bond was assigned to Young and others. to whom a mortgage of the premises was executed on the same day. This assignment was afterwards erased. It cannot be presumed, that this erasure was made, or the bond delivered up, until the mortgage was satisfied. In June, 1790, proceedings were instituted on this mortgage in the high court of chancery, and a decree of foreclosure and sale of part of the property was obtained. The sale was made in November, 1790, and the debt of Young was satisfied. The report. however. was not made to the court. Of these proceedings against the property, Mr. Banks was bound to take notice. He was, therefore, bound to know that the claim of Young was satisfied, and that he had no power over the bond. The bill filed in 1790, states a sale, it is presumed, of this property to Alexander Donald, with the consent of the mortgagees. and on the 3d of December, 1790, a conveyance was made in pursuance of that sale. Of this sale. Mr. Banks cannot be presumed to have been ignorant. He does not state himself, to have been ignorant of it. Without inquiring into other circumstances, the possession of Donald bound him to take notice of it. If Young. after joining in the conveyance to Donald. has given up the bond to Banks. he has been guilty of a gross fraud. which would merit the severest animadversion of the laws. But be this as it may, I must consider Mr. Banks as a trustee who, after notice of the equitable transfer of the estate, endeavours to defeat the rights of the purchaser. I can. therefore, perceive no ground on which to sustain his claim. Respecting the lot sold to Nelson, Heron & Co.. there can be still less question, because the legal estate is not in Henry Banks & Co.. and the prior equity is in Donald. The rights of Dr. Currie cannot be decided on, he not being party to this suit. I can only inquire whether Mr. Banks can retain for him. There can be, I think. no case or principle stated. which would enable him to pursue a purchaser who has paid the purchase money for his land, although, at the time of paying the purchase money, he had notice that Currie was unpaid. His claim rests upon the ground of contract. I am inclined to think, from the bill in Young's suit. that a part of the purchase money is not credited. Currie may claim for that after the whole debt from Stockdell to Donald is satisfied.

DECREE: The decree which was rendered in this case. after reciting. that in the opinion of the court. the defendant. Banks. had no equity against the plaintiff. either in his own right, or as a partner of, or representing Hunter. Banks & Co.. directs the defendant Banks. to "deliver up to the plaintiff, the bond of Fulwar Skip-

with and Henry Banks, to Francis Groves, and by the latter assigned to the said John Stockdell, in the proceedings mentioned: that he also deliver up to the plaintiff, the deed amongst the exhibits from the said Banks to James Heron, and by him assigned to the said Stockdell: that the said defendant, Banks, convey and release to the said defendant, Daniel Call, in fee simple, all his right, claim, interest, and estate, either in his own right, or as a partner of, or representing, Hunter, Banks & Co., in the lands, houses, and tenements mentioned in the said bond from Fulwar Skipwith, to the said Francis Groves;" and further directs three special commissioners, appointed by the court, to sell the same, and pay the proceeds of sale to the plaintiff.

NOTE. As to the light in which secret liens are regarded in equity, see Bailey v. Greenleaf. 7 Wheat. [20 U. S.] 46; Moore v. Holcombe. 3 Leigh. 604; Duval v. Bibb. 4 Hen. & M. 113. In Bailey v. Greenleaf [supra] in which there was an actual conveyance of the legal title, the court said. that the lien of the vendor for purchase money remaining unpaid, if in the nature of a trust, was a secret trust; and, although to be preferred to any other subsequent equal equity, unconnected with a legal advantage, or equitable advantage which gives a superior claim to the legal estate, will be postponed to a subsequent equal equity, connected with such advantage. They, therefore, refused to support the secret lien of the vendor, against a creditor of the purchaser, who was a mortgagee. It would seem a fortiori, that a secret equity, subsequently acquired, could not be sustained against a bona fide purchaser, without notice. See. also, 2 Rob. Prac. 180–182.